## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **EAST GOSHEN PHARMACY, INC. D/B/A OPTIONCARE OF CHESTER COUNTY,** on behalf of itself and all others similarly situated, | : : : : : | **CIVIL ACTION NO. _____** |
| **PLAINTIFF,** v. | : : : | |
| **VISA U.S.A., INC., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED and MASTER CARD INTERNATIONAL, INC.,** | : : : : : | **COMPLAINT - CLASS ACTION** **JURY TRIAL DEMANDED** |
| **DEFENDANTS.** | : | **July 22, 2005** |

Plaintiff, East Goshen Pharmacy, Inc. d/b/a Optioncare of Chester County, on its own behalf and on behalf of all other members of the class described herein, brings this action for damages and injunctive relief under the federal antitrust laws against the Defendants named above, demanding a trial by jury, and in support thereof alleges, upon information and belief except as to those paragraphs applicable to the named Plaintiff, which are based on personal knowledge, as follows:

### JURISDICTION AND VENUE

1.      This Complaint is filed and these proceedings are instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief and the costs of suit, including reasonable attorneys' fees, for the injuries sustained by Plaintiff and the members of the class that it represents, resulting from violations by the Defendants, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. 15 § 1.  The jurisdiction of this

Court is founded upon 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 15.

2.      The combination and conspiracy charged in this Complaint were carried out in substantial part within this District. The Defendants named herein are found, do business or transact business within this District, and a substantial part of the interstate trade and commerce described herein has been carried out within this District.  Venue is appropriate within this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under 28 U.S.C. § 1391.

## SUMMARY OF THE ACTION

3.      The Visa and MasterCard credit card networks are collectively owned by Defendants and their co-conspirators, including member banks and other organizations not named as Defendants herein.  Defendants have conspired to fix "interchange fees."  These fees are paid by the merchant's bank ("acquiring bank") to the cardholder's bank ("issuing bank") in most retail transactions paid by credit card.  This artificially-inflated interchange fee in turn serves as a floor for the "merchant discount" fee, which the merchant subsequently pays to the acquiring bank, and is itself artificially inflated.  Plaintiff represents a class of hundreds of thousands of commercial businesses that have paid artificially-inflated fees as a result of the above-referenced conspiracy, as well as for other reasons detailed herein.

## THE PARTIES

4.      Plaintiff, East Goshen Pharmacy, Inc. d/b/a Optioncare of Chester County, is a Pennsylvania corporation with its principal place of business in West Chester, Pennsylvania. Plaintiff has paid substantial and inflated merchant discount fees as a result of Defendants' conspiracy during the time period relevant to this action.

5.      Visa U.S.A., Inc. ("Visa U.S.A.") and Visa International Service Association, Inc.

2

("Visa International") are associations of independent banks structured as membership corporations. Both corporations are organized under the laws of the State of Delaware, with their principal places of business in San Francisco, California. Visa International, Visa U.S.A., and all of their predecessors and subsidiaries are referred to herein collectively as "Visa."

6.      Visa International has ultimate authority over Visa U.S.A. and is the parent corporation of the Visa system. Visa International has delegated some authority to its regional boards, but Visa U.S.A.'s authority to regulate even matters solely within the United States is subject to Visa International's policies.

7.      MasterCard Incorporated ("MasterCard Inc.") is a private, SEC-registered share company, organized under the laws of Delaware, with its principal place of business in Purchase, New York.

8.      MasterCard International, Inc. ("MasterCard International") is also an association of independent banks structured as a membership corporation. It is a subsidiary of MasterCard Inc. It is organized under the laws of the State of Delaware, with its principal place of business in Purchase, New York. MasterCard Inc. and MasterCard International, and all of their predecessors and subsidiaries, are referred to herein collectively as "MasterCard."

9.      The acts charged in this Complaint have been committed by Defendants and were authorized, ordered and committed by their officers, directors, agents, employees, or representatives while actively engaged in the management, direction, control or transaction of their business or affairs.

10.      Various other persons, firms and corporations, including the member banks not named as Defendants in this Complaint, have participated as co-conspirators with Defendants in

3

the offenses complained of herein and have performed acts and made statements in furtherance of the conspiracy.

11.    Defendants' unlawful and intentional concerted actions have severely damaged Plaintiff and the members of the class it seeks to represent.

## DEFINITIONS

12.    "Credit Cards" are general purpose cards which give borrowers a revolving line of credit which they can borrow against, carrying a balance with an agreed-upon interest rate.

13.    A "Member Bank" is a bank which is a member of the Visa and/or MasterCard associations and issues Visa and/or MasterCard credit cards to its customers, and/or acquires payment transactions from merchants.

14.    A "Cardholder" is a person or business which has been issued a credit card.

15.    "Network Services" or "Card Services" means a group of multiple banks which are interconnected by electronic or telecommunications means to one or more computers, processors or switches for the purpose of providing credit card services to the Cardholder and retailer customers of the member banks.

16.    "Acquiring Bank" means a member of Visa and/or MasterCard that acquires payment transactions from merchants and acts as a liaison between the merchant and the credit card network to assist in processing the payment transaction.

17.    "Issuing Bank" means a member of Visa and/or MasterCard that issues Visa and/or MasterCard branded credit cards to consumers.

18.    "Merchant Discount Fee" is the fee paid by the merchant for Network Services.

19.    "Interchange Fee" is a fee that merchants pay to the Issuing Bank through the

4

Acquiring Bank for each retail transaction where the Issuer's card is used to pay at one of the Acquirer's retail store accounts. The Interchange Fee is a component of and floor for the Merchant Discount Fees.

## TRADE AND INTERSTATE COMMERCE

20.     The trade and interstate commerce relevant to this action is the provision of network services for credit cards.

21.     During all or part of the period during which the events described herein occurred, each of the Defendants sold network services for credit cards in a continuous and uninterrupted flow of interstate commerce to Plaintiff and members of the class located in the United States.

22.     The activities of the Defendants and their co-conspirators, as described herein, were within the flow of and had a substantial effect on interstate commerce.

## RELEVANT MARKET

23.     The relevant market is the market for network services associated with general-purpose credit cards. The relevant geographic market is the United States. In this market, the sellers are the Defendant credit card networks and their Member Banks, and the buyers are primarily retail merchants. The interchange fee comprises a substantial portion of the price paid by such merchants to receive payment for transactions associated with a credit card. Retail merchants as a whole pay billions of dollars every year to purchase network services in the relevant market.

24.     Retail merchants cannot substitute other payment methods (such as cash, checks, debit cards or charge cards) for general purpose credit cards because of the importance of such cards to their customers.

5

25.     At all relevant times, Visa and MasterCard have had substantial market power in the relevant market, as demonstrated by: (1) their ability to raise interchange fees without losing business to other general purpose credit cards, or payment methods other than general purpose credit cards; (2) their ability to discriminate in price among different classes of retailers based, in part, on each class' ability to resist higher interchange fees; and (3) their ability to shift credit card usage from standard credit cards (with historically increasing interchange fees) to premium credit cards, with even higher interchange fees.

26.     There are significant barriers to entry in the relevant market. No company has entered the market since 1985. Entry is estimated to cost over $1 billion, in large part due to the problem of developing a network of retailers without an existing network of cardholders, who will not use cards that are not accepted by a large network of retailers.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action on its own behalf and as a class action under the provisions of Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the entire class as follows:

a.      The class consists of all individuals, corporations, partnerships, proprietorships and other business entities who have accepted Visa and/or MasterCard credit cards and paid Merchant Discount Fees during the fullest period permitted by the applicable statutes of limitations (the "Class").  Excluded from the Class are the named Defendants and their affiliates, subsidiaries and co-conspirators, and federal, state and local government purchasers.

b.      Plaintiff believes that there are, at a minimum, hundreds of thousands of

Class members who paid Merchant Discount Fees during the relevant period.  Their exact number and identities are presently unknown to Plaintiff, but are known to the Defendants.

        c.      The Class is so numerous that joinder of all members is impractical.

        d.      There are numerous questions of law and fact common to the Class, including:

        (1)      Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to raise, fix, maintain, or stabilize Interchange Fees and Merchant Discount Fees at artificially high levels, and otherwise restrain trade in the market for credit card network services;

        (2)      Whether Defendants possess and exercise market power in the market described in this Complaint;

        (3)      The duration and extent of the contract, combination or conspiracy alleged in the Complaint;

        (4)      The mechanisms used to accomplish the contract, combination or conspiracy;

        (5)      Whether Defendants violated Section 1 of the Sherman Act;

        (6)      The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages; and

        (7)      Whether injunctive relief is necessary to restrain future violations.

        e.      Plaintiff is a member of said class, its claims are typical of the claims of the Class members and it will fairly and adequately protect the interests of the Class.  Plaintiff is represented by competent counsel experienced in the prosecution of class action antitrust

litigation.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the remainder of the Class.

        f.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

        g.      The Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

        h.      The questions of law and fact common to the Class members predominate over any questions affecting only individual members.

        i.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which purchase records exist.  Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims too small to support the expense of individual complex litigation.

## FACTUAL ALLEGATIONS

28.     Visa and MasterCard operate the two largest credit card networks in the United States, through which they facilitate the exchange of funds and payment of fees between merchants, acquiring banks, issuing banks and consumers.

29.     Visa and MasterCard are owned by the numerous banks that are the members of their networks.  All of those banks, as a condition of membership in the networks, agree to abide by the policies and regulations of the respective networks, including the policies and regulations relevant to this Complaint.

30.     The Visa and MasterCard associations have virtually identical Member Banks. Indeed, nearly every major bank in the United States is or was during, the relevant period, a member of both the Visa and MasterCard associations - reflecting, currently, a 95 percent overlap in association membership.  Most of these common Member Banks have an ownership interest in both the Visa and MasterCard associations. Since 1975, virtually all significant card issuing Member Banks have become owners of both Visa and MasterCard.  Yet, despite this overlap in membership and ownership, neither Visa nor MasterCard enforces the safeguards necessary to prevent one association from obtaining confidential, competitive information about the other.

31.     As a result, those banks, acting through and on behalf of Visa and MasterCard, jointly set uniform Interchange Fees for each of several rate categories, which are imposed on those merchants for credit card transactions.  All such fees are fixed at the network level by the networks' pricing groups, the recommendations of which are summarily approved by the networks' boards of directors.  No two member banks negotiate interchange fees among themselves.

32.     Acquiring banks charge merchants a Merchant Discount Fee for every credit card transaction facilitated by the credit card networks. Interchange fees are a substantial component of the Merchant Discount Fees, and effectively act as a floor for Merchant Discount Fees, as any acquiring bank that charged a Merchant Discount Fee less than the interchange fee for any particular transaction would suffer a loss on the transaction.

33.     The imposition of fixed Interchange Fees constitutes horizontal price fixing and is not reasonably necessary to Visa and MasterCard network operations.

34.     In addition, Defendants illegally tie and bundle together separate and distinct

9

services in the Interchange Fee, including payment guarantee services, which insure merchants against various forms of payment fraud.

35. Visa and MasterCard require merchants to purchase payment guarantee services as a condition of using their credit card networks - thus effectively denying those merchants the ability to purchase such services from other providers, or to insure themselves against such risks.

36. Interchange Fees and other fees and services are a part of the Merchant Discount Fee during the relevant period and are higher than they would have been, if they would have existed at all, absent Defendants' violations of law as described herein.

## COUNT I

### Conspiracy to Fix and Maintain Prices in *Per Se* Violation of 15 U.S.C. § 1

37. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

38. The Defendants and their co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in the provision of credit card network services in per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

39. The aforesaid combination and conspiracy consisted of an agreement, understanding and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to raise, fix, stabilize and maintain at artificially high levels the Interchange Fees and Merchant Discount Fees which Defendants charged to merchants throughout the United States.

40. For the purpose of forming and effectuating the aforesaid combination and conspiracy, the Defendants and their co-conspirators did those things which they combined and

conspired to do.

41.     The aforesaid combination and conspiracy had the following effects, among others:

        a.      Interchange Fees and Merchant Discount Fees charged by Member Banks were raised, fixed, stabilized or maintained at artificially high and non-competitive levels;

        b.      merchants who purchased credit card network services from Member Banks were deprived of the benefits of free and open competition in the market for those services; and

        c.      price competition among the Defendants in the provision of credit card network services to merchants who purchased those services was restrained, suppressed and eliminated.

42.     Defendants' conduct was undertaken for the purpose of and with the effect of fixing prices and eliminating competition, in per se violation of Section 1 of the Sherman Act.

43.     As a direct and proximate result of the unlawful conduct of the Defendants alleged herein, Plaintiff and the members of the Class were not able to purchase credit card network services at prices determined by free and open competition, and consequently have been injured

in their business and property in that, *inter alia*, they have paid more for credit card network services than they would have paid in a free and open competitive market.  Plaintiff cannot state at this time the precise amount of damages sustained by it and the members of the Class, which amount will require discovery from the books and records of the Defendants, but alleges that the damages are substantial.

44.     Defendants' antitrust violation threatens continuing loss and injury to Plaintiff and the Class unless enjoined by the Court.

## COUNT II

### Unreasonable Restraint of Trade in Violation of 15 U.S.C. § 1

45.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

46.     The collective establishment of Interchange Fees by Defendants and their Member Banks constitutes a contract, combination or conspiracy in unreasonable restraint of trade.  The aforesaid combination and conspiracy consisted of an agreement, understanding and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to raise, fix, stabilize and maintain at artificially high levels the Interchange Fees and Merchant Discount Fees which Defendants charged to merchants throughout the United States.

47.     Defendants' conspiracy has had substantially adverse effects on competition in the market for credit card network services, and has resulted in higher prices and lower output than would exist in the absence of that conspiracy.  There are no pro-competitive justifications for Defendants' restraints and, even if there were, there are far less restrictive means of achieving those alleged justifications.

48.     For the purpose of forming and effectuating the aforesaid combination and conspiracy, the Defendants and their co-conspirators did those things which they combined and conspired to do.

49.     The aforesaid combination and conspiracy had the following effects, among others:

       a.      Interchange Fees and Merchant Discount Fees charged by Member Banks were raised, fixed, stabilized or maintained at artificially high and non-competitive levels;

       b.      merchants who purchased credit card network services from Member Banks were deprived of the benefits of free and open competition in the market for those services; and

       c.      price competition among the Defendants in the provision of credit card network services to merchants who purchased those services was restrained, suppressed and eliminated.

50.     Defendants' conduct was undertaken for the purpose of and with the effect of fixing prices and eliminating competition in per se violation of Section 1 of the Sherman Act.

51.     As a direct and proximate result of the unlawful conduct of the Defendants alleged herein, Plaintiff and the members of the Class were not able to purchase credit card network services at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for credit card network services than they would have paid in a free and open competitive market.  Plaintiff cannot state at this time the precise amount of damages sustained by it and the members of the Class, which amount will require discovery from the books and records of the Defendants, but alleges that the damages are substantial.

52.     Defendants' antitrust violation threatens continuing loss and injury to Plaintiff unless enjoined by the Court.

## COUNT III

### Unlawful Tying of Premium Cards to Non-Premium Cards in *Per Se* Violation of 15 U.S.C. § 1

53.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

54.     For the purposes of Count III, the relevant product markets are: (1) the market for credit card network services associated with non-premium, general-purpose credit cards (the tying product market); and (2) the market for credit card network services associated with premium, general-purpose credit cards (the tied product market).  The relevant geographic market is the United States.  A seller that was only a provider of network services for either group of cards in the United States would be able to raise Interchange Fees significantly above a competitive level without losing so much business as to make the fee increases unprofitable.

55.     At all relevant times, Visa and MasterCard have had substantial market power in the tying market - the ability to raise prices substantially above a competitive level without losing so much business as to make the price increases unprofitable.

56.     By means of their rules requiring merchants to accept all Visa and/or MasterCard cards as a condition of accepting any such cards, Defendants and their co-conspirators have tied the purchase of network services associated with premium general purpose credit cards to the purchase of network services associated with non-premium general purpose credit cards. As a result of this tying arrangement, Plaintiff and Class members have been forced to accept premium cards and to pay higher Interchange Fees associated with their use.

57.     This tying arrangement has affected a substantial amount of commerce in the

14

market for the tied product.

58.     As a direct and proximate result of Defendants' tying arrangement, Interchange

Fees for premium Visa and MasterCard credit cards have been set at artificial, supra-competitive

levels, and Plaintiff and Class members have suffered injury to their business and property by

paying such artificially inflated, supra-competitive interchange fees.

59.     Defendants' antitrust violation threatens continuing loss and injury to Plaintiff

unless enjoined by the Court.

## COUNT IV

### Unlawful Tying of Network Services in *Per Se* Violation of 15 U.S.C. § 1

60.     Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs as if set forth fully herein.

61.     For the purposes of Count IV, the relevant product markets are: (1) the market for

credit card network services associated with general purpose credit cards other than payment

guarantee services (the tying product market); and (2) the market for payment guarantee services

(the tied product market). The relevant geographic market is the United States. A seller that was

only a provider of network services of either type in the United States would be able to raise

Interchange Fees significantly above a competitive level without losing so much business as to

make the fee increases unprofitable.

62.     At all relevant times, Visa and MasterCard have had substantial market power in

the tying market - the ability to raise prices substantially above a competitive level without losing

so much business as to make the price increases unprofitable.

63.     At all relevant times, Visa and MasterCard have tied the sale of payment

guarantee services for general purpose credit card transactions to the sale of network services other than payment guarantee services. Merchants are thus unable to purchase payment guarantee services from independent vendors or to self-insure against loss due to fraud.

64.     Absent this tying arrangement, many merchants would have purchased payment guarantee services from sellers other than Visa and MasterCard, or would not have purchased such services at all. Even those merchants that would have purchased such services from Visa and MasterCard would have benefitted from the lower prices Visa and MasterCard would have offered in a competitive environment.

65.     This tying arrangement has affected a substantial amount of commerce in the market for the tied product.

66.     As a direct and proximate result of Defendants' tying arrangement, Interchange Fees for Visa and MasterCard credit cards - which are in large part a function of the price of payment guarantee services - have been set at artificial, supra-competitive levels, and Plaintiff and Class members have suffered injury to their business and property by paying such artificially inflated, supra-competitive interchange fees.

67.     Defendants' antitrust violation threatens continuing loss and injury to Plaintiff unless enjoined by the Court.

## JURY TRIAL DEMAND

68.     Plaintiff demands trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A.      The Court determine that this action may be maintained as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given each and every member of the Class;

B.      The Defendants' actions alleged herein be adjudged and decreed to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.      Plaintiff and each and every member of the Class recover damages, as provided by law, determined to have been sustained by each of them, and that joint and several judgments in favor of Plaintiff and each and every member of the Class, respectively, be entered against the Defendants, and each of them;

D.      Defendants be enjoined from continuing the illegal course of conduct alleged herein;

E.      Plaintiff and other members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

F.      Plaintiff and the other members of the Class be granted such other, further and different relief as the nature of the case may require or as may seem just and proper to this Court.

Dated:  July 22, 2005                    BY: _____

James E. Miller (CT-21560)
Patrick A. Klingman (CT-17813)
Karen M. Leser (CT-23587)
**Shepherd Finkelman Miller & Shah, LLC**
65 Main Street
Chester, CT 06412
Tel: 860-526-1100
Fax: 860-526-1120

17

Eugene A. Spector
Jeffrey L. Kodroff
Jeffrey J. Corrigan
Jay S. Cohen
**Spector, Roseman & Kodroff, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: 215 496-0300
Fax: 215 496-6611

Philip A. Steinberg, Esq.
124 Rockland Avenue
Bala Cynwyd, PA 19004
Tel: 610-664-0972
Fax: 610-664-3101

John P. McCarthy, Esq.
217 Bay Avenue
Somers Point, NJ 08224
Tel: 609-653-1094
Fax: 609-653-3029

Jeffrey A. Brodkin, Esq.
1845 Walnut Street, 22nd Floor
Philadelphia, PA 19103
Tel: 215-567-1234
Fax: 215-569-0809

*Attorneys for Plaintiff*